UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED 2004 MAR -2 P 3: 35

US DISTRICT COURT
BRIDGEPORT CT

LANNY MARDEN

v.

WARDEN LARRY J. MYERS, et al.[1]

PRISONER
Case No. 3:02cv570(GLG)

## RULING ON MOTION TO DISMISS

The plaintiff, Lanny Marden, is an inmate confined at the MacDougall Correctional Institution in Suffield, Connecticut. He filed this civil rights action pro se pursuant to 42 U.S.C. § 1983. He alleges that the defendants have failed to provide him with medically prescribed orthopedic boots. Pending is a motion to dismiss filed by the defendants. For the reasons that follow, the motion is granted in part and denied in part.

### Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but

---

[1]The named defendants are Warden Larry J. Myers, Major Neil Kearney, Major Michael LaJoie, Lt. Marc Alderucci, Pamela Shea, Dr. Edward Blanchette, Dr. Edward Pesanti, Cheryl Malcom.

whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

## Facts

The court accepts as true the following facts, taken from the complaint. Prior to incarceration, the plaintiff fractured his right femur in a motorcycle accident. As a result of the accident, the plaintiff's right leg is approximately three inches shorter than the left leg. This deformity causes the plaintiff to experience pain in his back and right knee while standing and walking.

In May 1998, a physician at Cheshire Correctional Institution prescribed a pair of boots fitted with an orthotic. The orthotic consisted of a sole lift on the outside of the boot and a long arch support inside the boot. The orthotic was designed to reduce the pain in the plaintiff's back and right knee and prevent further damage to the plaintiff's back and knee. The plaintiff received the boots on June 16, 1998. The boots significantly reduced the pain in the plaintiff's back and knee.

On May 18, 1999, the plaintiff was transferred to Northern Correctional Institution.

During the intake health screening, a nurse confiscated the plaintiff's orthotic boots and informed the plaintiff that he could not have the boots because of safety and security reasons. The plaintiff wrote to the medical unit asking that the boots be returned to him. The medical unit informed the plaintiff that he must contact the warden because the return of his boots involved a safety and security issue. The plaintiff spoke to Warden Myers and wrote to him seeking to have his boots returned. The plaintiff informed Warden Myers that he was in a lot of pain. Warden Myers referred the plaintiff back to the medical unit.

On June 29, 1999, the plaintiff's boots were returned to him. On August 14, 1999, during a shakedown of the plaintiff's cell, correctional officers ripped the linings and arch supports out of the plaintiff's boots and confiscated them. The plaintiff asked the medical unit to repair or replace the orthotic boots. The plaintiff also submitted numerous written requests and had numerous conversations with Majors Kearney and LaJoie, Lieutenant Alderucci and Regional Health Services Administrator Shea regarding the repair or replacement of his orthotic boots. He also informed these defendants that he could not wear the damaged boots because they caused him pain in his feet, right leg and back.

On August 20, 1999, a prison physician examined the plaintiff and determined that new orthotics were medically appropriate. On September 3, 1999, the physician submitted a request for a heel lift and orthotic for the plaintiff to the Utilization Review Committee ("URC"). On September 14, 1999, the URC recommended that the matter be reviewed by custodial staff. Major Kearney headed the investigation of the matter. On November 12, 1999, Lieutenant Alderucci issued a report in which he concluded that the plaintiff's boots were fully functional and recommended that no further action be taken.

The medical staff at Northern subsequently submitted another request to the URC seeking a functional orthotic with a heel lift and an orthopedic evaluation of the plaintiff's leg. On November 2, 1999, the URC denied approval and recommended conservative management. The URC also stated that the plaintiff could have an orthotic sent from home if custody approved it. In January 2000, a nursing supervisor indicated that the URC's decision had been submitted to Major Kearney for follow-up with the Regional Administrator Shea. Administrator Shea discussed the matter with custody staff. On January 4, 2000, Administrator Shea informed the plaintiff that he could have an orthotic sent from home. On January 5, 2000, the plaintiff filed a health emergency grievance indicating that his family would not be able to provide him with an orthotic for his right boot. On February 7, 2000, an outside contractor fitted the plaintiff for an orthotic and a heel lift and on March 9, 2000, the plaintiff received the orthotic and heel lift. The plaintiff seeks damages and injunctive relief from the defendants.

## Discussion

The defendants move to dismiss this action on five grounds. The defendants argue that: (1) the claims against them in their official capacities are barred by the Eleventh Amendment, (2) the claim for injunctive relief is moot, (3) the plaintiff has failed to state a claim of deliberate indifference to medical needs, (4) the plaintiff has not sufficiently alleged the personal involvement of the defendants in his claims, and (5) they are protected by qualified immunity.

I.    Eleventh Amendment Immunity

The DOC defendants first argue that all claims for damages against them in their official capacities are barred by the Eleventh Amendment. The plaintiff concedes that any claims against the defendants in their official capacities for monetary damages are barred by the Eleventh

Amendment.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

The plaintiff sues the defendants in their official and individual capacities and seeks both injunctive relief and damages. Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion to dismiss is granted as to those claims.

II.   Claim for Injunctive Relief

The plaintiff seeks injunctive relief in the form or an order enjoining the defendants from confiscating or destroying his orthopedic boots. The defendants argue that this relief is moot because the plaintiff is no longer is confined at Northern Correctional Institution.

The Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. See Mawhinney v. Henderson,

5

542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e.g., McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

The plaintiff was not incarcerated at Northern Correctional Institution when he filed this action and now resides at Osborn Correctional Institution in Somers, Connecticut. Thus, all claims for injunctive relief are moot. The defendants' motion to dismiss is granted as to the claim for injunctive relief. All possible claims for relief against the defendants in their official capacities have been dismissed.

III.    Deliberate Indifference to Serious Medical Needs

The plaintiff alleges that the defendants were deliberately indifferent to his need for an orthotic and heel lift to correct the difference in the length of his right leg. The defendants argue that the plaintiff has failed to allege facts demonstrating that they were deliberately indifferent to his serious medical condition.

The Eighth Amendment protects inmates from deliberate indifference by prison officials

6

to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. Tomarkin, 534 F. Supp. at 1230-31. Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982). In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. See Hyde v. Mcinnis, 429 F.2d 864, 868 (2d Cir. 1970); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote

v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants do not contest the fact that the plaintiff's medical condition was serious. Rather, they contend that they were not deliberately indifferent to the plaintiff's serious

medical condition. Thus, the court addresses only the deliberate indifference prong of the Eighth Amendment standard.

The plaintiff alleges that the orthotics which were prescribed for him by a physician at Cheshire Correctional Institution helped to reduce the stress on his knee and pain in his back due to the difference in the length of his legs. Without the orthotics, the plaintiff experiences pain while walking and standing. The plaintiff claims that the defendants deliberately confiscated and destroyed his boots with the heel lifts and arch supports and then failed to repair them or provide him with a new pair for over six months. The plaintiff contends that the facts do not support the defendants claim that the orthotic boots posed a safety and security hazard. The plaintiff alleges that the defendants confiscated his boots upon his admission to Northern due to safety and security concerns, but returned the boots to him six weeks later. The defendants then confiscated and destroyed the same boots during a cell search approximately forty-five days after the boots had been returned to him claiming that the boots posed a threat to the safety and security of the facility. The plaintiff also argues that the fact that the defendants were willing to permit him to obtain orthotics from his family belies their contention that the orthotics were a safety and security concern. Finally, the plaintiff alleges that the several defendants disregarded an order by a physician recommending the replacement of the orthotics and reached their own conclusions regarding plaintiff's medical treatment despite the fact they were not medically trained physicians, nurses or physicians' assistants. The court concludes that the plaintiff's allegations may be liberally construed to state a claim of denial or delay in receiving medical treatment for his serious medical condition and may constitute deliberate indifference to that condition. Based on these allegations, the court cannot conclude that the plaintiff would be unable to produce

evidence to demonstrate deliberate indifference to a serious medical need. Accordingly, the defendants' motion to dismiss is denied on this ground.

IV.     Personal Involvement

The defendants argue that the plaintiff has failed to allege that any of the defendants were involved in the denial of medical treatment to the plaintiff. The plaintiff disagrees.

The plaintiff alleges that he spoke to Warden Myers and wrote to him about the initial confiscation of his orthotic boots. The medical staff at Northern had referred the plaintiff to Warden Myers because the confiscation of the boots involved a safety and security issue. Warden Myers responded by referring the plaintiff back to the medical unit. The plaintiff has sufficiently alleged that Warden Myers was aware of the plaintiff's medical condition and need for medical treatment.

The plaintiff alleges that after the confiscation of his boots during the shakedown of his cell, he spoke and wrote to defendants Kearney, LaJoie, Alderucci and Shea in attempt to have his orthotic boots repaired or replaced. In November 1999, defendant Alderucci determined that the plaintiff's boots were functional and concluded no further action should be taken. In January 2000, defendant Shea discussed the plaintiff's medical condition with correctional staff to determine whether the plaintiff should be permitted to obtain an orthotic from his family. Defendant Shea concluded that the plaintiff could have his family send him an orthotic. The plaintiff has sufficiently alleged the personal involvement of defendants Kearney, LaJoie, Alderucci and Shea.

The plaintiff alleges that Dr. Pesanti and Cheryl Malcolm were members of the URC and that on two occasions they decided not to approve the request for a new orthotic. Instead, they

referred medical decisions concerning plaintiff's treatment to correctional staff. The plaintiff has alleged that defendants Pesanti and Malcolm were aware of the his medical condition and deliberately failed to provide him with timely medical treatment/equipment for the condition.

The plaintiff describes Dr. Blanchette as the clinical director of the Department of Correction. There are no factual allegations in the amended complaint regarding Dr. Blanchette. The plaintiff does not allege that Dr. Blanchette was aware of his medical condition or the confiscation of the plaintiff's orthotics. The plaintiff simply concludes that Dr. Blanchette "created a policy or custom or allowed the continuation of a policy custom, under which medical personnel allowed unqualified custodial staff to make decisions about the appropriate medical treatment to be provided to the plaintiff." Am. Compl. at 9. There are no facts in the amended complaint to support plaintiff's claim that a policy or custom existed concerning the decisions of custodial staff about medical treatment for inmates. Thus, the court concludes that the plaintiff has failed to allege the personal involvement of Dr. Blanchette in the denial of or delay in medical treatment to the plaintiff. The motion to dismiss is granted as to all claims for monetary damages against Dr. Blanchette in his individual capacity. Accordingly, all claims against Dr. Blanchette have been dismissed.

V.      Qualified Immunity

The defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S.

11

800, 818 (1982)). To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court concludes that "a violation could be made out on a favorable view of the parties submissions, the next sequential step is to ask whether the right was clearly established." Id. The determination of whether the right was clearly established the "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." Id.; see also Anderson v. Creighton, 438 U.S. 635, 640 (1987).

The court has determined above that, construing the allegations in the light most favorable to the plaintiff, the complaint states a claim against defendants Myers, Kearney, LaJoie, Alderucci, Shea, Pesanti and Malcom for failure to provide timely medical care to the plaintiff from May 1999 to March 2000. The court concludes that the right to be free from deliberate indifference to serious medical needs, established in Estelle v. Gamble, 429 U.S. 97 (1976), encompasses the conduct alleged in the plaintiff's complaint. Id. at 104-05 (intentional delay or denial of medical treatment may state a claim of deliberate indifference to medical needs). Because the plaintiff's right to timely medical care was clearly established in 1999 and 2000, the motion to dismiss is denied on the ground that defendants Myers, Kearney, LaJoie, Alderucci, Shea, Pesanti and Malcom are protected by qualified immunity. The defendants may renew this argument in a motion for summary judgment or at trial.

## Conclusion

The defendants' Motion to Dismiss [**doc. # 30**] is **GRANTED** as to the claims for injunctive relief, the claims against all defendants for monetary damages in their official capacities and the individual capacity claims against Dr. Blanchette. All claims against Dr. Blanchette have been dismissed.

An answer to the amended complaint shall be filed within thirty days of the date of this order.

Discovery pursuant to the Federal Rules of Civil Procedure, Rules 26 through 37, shall be completed within three months of the date of this order.

Motions for summary judgment, if any, shall be filed within four months of the date of this order.

Pursuant to Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within 21 days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

**SO ORDERED** in Waterbury, Connecticut, this 2nd day of February, 2004.

Gerard L. Goettel
United States District Judge