```
       LOUIS PAGLIUCO and 2284 CORPORATION, Plaintiffs, v. CITY OF
          BRIDGEPORT, THOMAS E. GECEWICZ, ROBERT SAPIRO, and JOSETTE
                         BOUKHALIL, M.D., Defendants.

                             No. 3:01CV836 (WIG)

          UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

                           2005 U.S. Dist. LEXIS 33738


                           December 13, 2005, Decided

                                 CASE SUMMARY
```

PROCEDURAL POSTURE: Plaintiffs, former owners of a strip bar, sued defendants, a city and three employees, pursuant to 42 U.S.C.S. §§ 1983 and 1988 alleging violation of their equal protection rights by the discriminatory enforcement of various ordinances and regulations. One former owner also alleged that two city employees filed a false complaint of alleged corruption of his minor son. Defendants moved for summary judgment. The owners contested the motion.

OVERVIEW: The club, which served a predominantly African-American clientele, provided adult entertainment. The city conducted numerous police raids and health department inspections of the club. During one inspection, two city employees observed one owner's three year old son at the club, and they filed a child endangerment report. The court found that the owners had standing because they were asserting their own rights to be free of unequal enforcement of the laws based on discriminatory criteria. The owners sufficiently alleged specific instances of selective enforcement. However, the court granted summary judgment for defendants because the owners failed to show that they were treated differently from similarly situated businesses. In particular, only one of the alleged comparable businesses had adult entertainment; the other businesses were full service restaurants. Thus, the owners failed to show that they were singled out for selective treatment when compared to similarly situated establishments. The court also granted summary judgment in favor of the two city employees. Since there was no showing that they filed false reports, they were entitled to immunity under state law.

OUTCOME: The court granted summary judgment in favor of defendants on the owners' claims and declined to exercise jurisdiction over the city's state law counterclaim, which it dismissed without prejudice.

CORE TERMS: summary judgment, similarly situated, clientele, dancers, selective, counterclaim, conclusory, strippers, liquor, deposition, inspection, male, unjust enrichment, establishment, rental, treated differently, admissible evidence, quotation, strip, equal protection, predominantly, patrons, genuine

issue of material fact, equal protection claim, genuine issue, material fact, moving party, comparable, state-law, movant

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Summary Judgment: Standards: General Overview

[HN1] A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: Summary Judgment: Burdens of Production & Proof: General Overview

[HN2] The burden of establishing that there is no genuine factual dispute rests with a moving party. A movant for summary judgment always bears the burden of production or the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. This burden of production, however, does not mandate that the movant provide affidavits demonstrating the absence of a genuine issue of fact. If the movant does not bear the ultimate burden of persuasion on that claim at trial, it may satisfy its initial burden by demonstrating that the record lacks substantial evidence to support an essential element of the nonmoving party's claim. If the movant is also the party bearing the ultimate burden of persuasion, then its burden is heavier. It must show that the record contains evidence satisfying its burden of persuasion and that no reasonable jury could find otherwise.

Civil Procedure: Summary Judgment: Burdens of Production & Proof: General Overview
Civil Procedure: Summary Judgment: Supporting Materials: General Overview

[HN3] Once a moving party satisfies its initial burden of production on summary judgment, the burden shifts to the nonmovant to demonstrate a genuine issue for trial through the identification of specific facts, supported by sufficient concrete probative evidence, to allow a rational trier of fact to find in its favor. A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. Additionally, to the extent that the nonmovant relies upon affidavits, the affiant's testimony must be based on personal knowledge, not information and belief, and must contain evidence that would be admissible at trial.

Civil Procedure: Summary Judgment: Standards: General Overview

[HN4] In ruling on a summary judgment motion, a court cannot resolve

issues of fact. It is empowered to determine only whether there are material issues in dispute to be decided by the trier of fact. The substantive law governing the case identifies those facts that are material. In assessing the record to determine whether a genuine dispute as to a material fact exists, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Summary judgment is improper is there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party.

Constitutional Law: Equal Protection: Scope of Protection

[HN5] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated be treated alike.

Constitutional Law: Equal Protection: Full & Equal Benefit

[HN6] To prevail on a claim of selective enforcement, plaintiffs in the United States Court of Appeals for the Second Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Constitutional Law: Equal Protection: Scope of Protection

[HN7] Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, the United States Supreme Court has long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.

Constitutional Law: Equal Protection: Full & Equal Benefit

[HN8] The United States Court of Appeals for the Second Circuit has held that a plaintiff must allege purposeful and systemic discrimination by specifying instances in which the plaintiff was singled out for unlawful oppression in contrast to others similarly situated. Conclusory allegations of selective treatment are not enough.

Constitutional Law: Equal Protection: General Overview

[HN9] To be similarly situated, the individuals with whom a plaintiff attempts to compare himself must be similarly situated in all material respects. A plaintiff must establish a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.

Civil Procedure: Summary Judgment

Constitutional Law: Equal Protection: General Overview

[HN10] As a general rule, whether persons are similarly situated is a factual issue that should be submitted to the jury. However, this rule is not absolute, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.

Civil Procedure: Summary Judgment: Supporting Materials: General Overview

[HN11] To avoid summary judgment a non-moving party can not rely simply on conclusory allegations or speculation, but instead must offer evidence to show that its version of the events is not wholly fanciful.

Torts: Public Entity Liability: Immunity: General Overview

[HN12] See [Conn. Gen. Stat. a 17a-101e(b)](Conn. Gen. Stat. a 17a-101e(b)).

Contracts Law: Remedies: Equitable Relief: Quantum Meruit

[HN13] Unjust enrichment is essentially an equitable doctrine, to be applied where no remedy is available pursuant to contract. The Connecticut courts have allowed a party to recover on a theory of unjust enrichment on the ground that, in a given situation, it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Ordinarily in an unjust enrichment case, the measure of damages is not the loss to plaintiff but the benefit to defendant.

COUNSEL: [*1] For Louis Pagliuco, 2284 Corp, Plaintiffs: John R. Williams, New Haven, CT.

For City of Bridgeport, Joseph P. Ganim, Mayor, City of Bpt, Thomas E. Gecewicz, Robert Sapiro, Jane Doe, MD, Defendants: John H. Barton, City of Bridgeport, Office of the City Attorney, Bridgeport, CT.

For City of Bridgeport, Joseph P. Ganim, Thomas E. Gecewicz, Robert Sapiro, Jane Doe, Counter Claimants: John H. Barton, City of Bridgeport, Office of the City Attorney, Bridgeport, CT.

For Louis Pagliuco, 2284 Corp, Counter Defendants: John R. Williams, New Haven, CT.

JUDGES: WILLIAM I. GARFINKEL, United States Magistrate Judge.

OPINIONBY: WILLIAM I. GARFINKEL

OPINION: RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 43] addressed to all counts of plaintiffs' amended complaint, as well as the City's counterclaim against plaintiffs for unjust enrichment.

Plaintiffs, the former owners and operators of a "somewhat seedy strip bar" n1 in Bridgeport, Connecticut, known as "Dangerous Curves," have brought this action pursuant to 42 U.S.C. aa 1983 and 1988, alleging that their rights under the[*2] Equal Protection Clause of the Fourteenth Amendment were violated by defendants' selective enforcement of the laws against them in an arbitrary and irrational manner and/or because plaintiffs primarily serve an African-American clientele. (Pls.' Am. Comp. P 1.) The alleged pattern and practice of discriminatory enforcement included increased police and health department inspections, far more rigorous enforcement of statutes and regulations, and the imposition of far more severe penalties against plaintiffs' business. (Pls.' Am. Comp. P 12.) Plaintiffs also claim that, as part of this pattern of harassment, defendants Gecewicz and Boukhalil, Bridgeport Health Department employees, filed a false complaint against plaintiff Pagliuco with the Connecticut Department of Children and Families ("DCF") concerning his alleged corruption of his minor son. Plaintiffs have asserted a substantive due process claim against defendants Gecewicz and Boukhalil, as well as a state-law claim for intentional infliction of emotional distress.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Pls.' Br. in Opp'n to M/SJ at 1.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*3]

The City of Bridgeport, having acquired the premises on which Dangerous Curves was located through foreclosure proceedings brought against plaintiffs' former landlord, has filed a counterclaim against plaintiffs for unjust enrichment, seeking unpaid rent for a three-year period during which Dangerous Curves occupied the premises.

For the reasons discussed below, summary judgment will be granted in favor of defendants on plaintiffs' federal and statelaw claims. Having granted summary judgment on all of the federal claims raised by plaintiffs, the Court declines to exercise supplemental jurisdiction over the City's counterclaim and dismisses the counterclaim without prejudice.

Summary Judgment Standard

The standard for granting a motion for summary judgment is well-established. [HN1] A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.   [HN2] The burden of establishing that [*4]there is no genuine factual dispute rests with the moving party. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). A "movant for summary judgment 'always bears' the burden of production or 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). This burden of production, however, does not mandate that the movant provide affidavits demonstrating the absence of a genuine issue of fact. Rather, if the movant does not bear the ultimate burden of persuasion on that claim at trial, it may satisfy its initial burden by demonstrating that the record lacks substantial evidence to support an essential element of the nonmoving party's claim. 11 James Wm. Moore, Moore s Federal Practice 3d @ 56.13[1] at 56-138 (3d[*5] ed. 2005). However, if the movant is also the party bearing the ultimate burden of persuasion, then its burden is heavier. It must show that the record contains evidence satisfying its burden of persuasion and that no reasonable jury could find otherwise. Id.

[HN3] Once the moving party satisfies its initial burden of production, the burden shifts to the nonmovant to demonstrate a genuine issue for trial through the identification of specific facts, supported by sufficient concrete probative evidence, to allow a rational trier of fact to find in its favor. Celotex, 477 U.S. at 324. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Additionally, to the extent that the nonmovant relies upon affidavits, the affiant's testimony must be based on personal knowledge, not information and belief, and must contain[*6] evidence that would be admissible at trial. See generally 11 Moore's Federal Practice 3d at @ 56.14[1][d].

[HN4] In ruling on a summary judgment motion, this Court cannot resolve issues of fact. Rather, it is empowered to determine only whether there are material issues in dispute to be decided by the trier of fact. The substantive law governing the case identifies those facts that are material. Anderson, 477 U.S. at 248. Further, in assessing the record to determine whether a genuine dispute as to a material fact exists, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Id. at 255; Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"Summary judgment is improper is there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." [Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)](#).

In this case, defendants have filed a Local Rule 56(a)1 Statement setting forth each material fact as to which they contend there is[*7] no genuine issue of material fact to be tried. Accompanying this statement are the sworn affidavits of defendants Sapiro, Gecewicz, and Boukhalil (Defs.' Ex. 1, 2, & 3), excerpts from plaintiff Pagliuco's deposition (Defs.' Ex. 5), the affidavit of Russell Liskov, the Associate City Attorney who prosecuted the eviction proceedings against plaintiffs (Defs.' Ex. 4), and various court, agency, and other documents involving plaintiffs. n2 Plaintiffs have filed a Local Rule 56(a)2 Statement in opposition to the motion for summary judgment, responding to defendants' Local Rule 56(a)1 Statement and setting forth disputed issues of material fact. See D. Conn. L. Civ. R. 56(a)2. The only supporting documentation filed by plaintiffs is the sworn affidavit of Louis Pagliuco dated May 8, 2001, attesting to the truth of the factual allegations of the original complaint (Pls.' Ex. A). The following facts are taken from these documents and are undisputed, unless indicated otherwise.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 These documents include: Defs.' Ex. 6: Offer in Compromise signed by Pagliuco in the Matter of Louis Pagliuco, Permittee, Dangerous Curves Cafe, Docket No. 01-410, State of Connecticut, Department of Consumer Protection; Defs.' Ex. 8: Complaint filed by the State of Connecticut against Pagliuco, et al., in the Superior Court of Fairfield County; Defs.' Ex. 9: Motion for Judgment in Accordance with Stipulation filed in that case; Defs.' Ex. 11: various pictures of the premises identified in plaintiff's deposition and defendants' affidavits; and Defs.' Ex. 10: Lease between 2284 Corp. and Wentworth Contractors Group, Ltd., referenced in plaintiff's deposition.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*8]

Factual Background

Plaintiff 2284 Corporation is a Connecticut corporation that owned and operated a strip bar located at 2284-2294 Fairfield Avenue in Bridgeport, Connecticut, known as "Dangerous Curves," from 1993 through the date this suit was filed. Plaintiff Louis Pagliuco was the owner and officer of 2284 Corporation and managed Dangerous Curves. 2284 Corporation leased the premises at 2284-2294 Fairfield Avenue from Wentworth Contractors Group Ltd., Joseph G. Voll, President, pursuant to a written amendment dated September 2, 1998, to the October 1, 1993 lease agreement for a basic rent charge of $ 2,200/month. n3

(Defs.' Ex. 10.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 The lease was for a five-year term with three five-year options with the rent increasing ten percent (10%) every five years. In addition to the basic rent payments, the lease required additional rental payments to the landlord for, inter alia, electricity, insurance, one-third of real estate taxes, certain repairs and maintenance expenses, water and sewer, and exterminator's services. (Defs.' Ex. 10.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*9]

On October 15, 1998, the City of Bridgeport took title to the property by strict foreclosure for delinquent taxes. (Defs.' Ex. 4.) On or about February 5, 1999, the City commenced eviction proceedings against plaintiffs. (Id.)

The City states that plaintiffs never made any rent payments to it. (Id.) Pagliuco testified that he sent the City a check every month but that his checks were returned by the City. (Defs.' Ex. 5, Pl.'s Dep. at 20.) Subsequent to the filing of this lawsuit, plaintiffs were evicted from the premises on September 23, 2001. (Defs.' Ex. 4 P 7; Defs.' Local R. 56(a) St. P 5.)

Dangerous Curves had adult entertainment in the form of strippers or go-go girls, and sold liquor and frozen pizza. n4 Dangerous Curves also had private booths for the dancers to perform lap dances with individual patrons. (Defs.' Local R. 56(a) St. P 10, admitted by Pls.; Pagliuco Dep. at 37-38.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Plaintiff Pagliuco described the business as a cafe with go-go dancers, jukeboxes, two pool tables, and liquor. (Pagliuco's Dep. at 17.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*10]

In approximately 1998 to 1999, plaintiffs' clientele changed from predominantly Caucasian to predominantly African-American. (Pls.' St. Mat. Facts P 5, not disputed by Defs.)

During the three-year time period from November 1997, through November 2000, Sgt. Robert Sapiro n5 of the Bridgeport Police Department and a supervisor of

the MOST detail n6 led numerous raids of Dangerous Curves, including eleven inspections of the premises. (Defs.' Local R. 56(a) St. P 11, admitted by Pls.) During the inspections of Dangerous Curves, Sgt. Sapiro or the other officers found used condoms on the floor, tickets for dancers, underage patrons on the premises, underage dancers, no valid liquor permit, and indications of prostitution. (Sapiro Aff. P 6.) Sgt. Sapiro observed the following violations of state liquor laws: naked dancing, dancers mingling with patrons, dancers touching patrons, and no liquor permit (Id. at P 7); and cited plaintiff for numerous violations of state statutes and ordinances. (Id. at P 12, admitted by Pls.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n5 Defendant Sapiro is now a lieutenant in the Bridgeport Police Department. [*11]

n6 "MOST" is an acronym for "Mayor's Office Special Task" force. As described in defendants' memorandum, one of the duties of the MOST detail was the supervision of liquor establishments.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Statewide Cooperative Crime Control Task Force conducted an undercover operation at Dangerous Curves between December 19, 2000, and February 15, 2001. (Defs. Local R. 56(a) St. P 13, admitted by Pls.) The results of this undercover operation are described in detail in a thirty-four-page nuisance complaint filed by the State Attorney's Office, in April 2001, against Pagliuco, the real property at 2294 Fairfield Avenue, 2284 Corporation, and the business known as Dangerous Curves. n7 (Defs.' Ex. 8.) Pagliuco entered into a stipulation to settle the lawsuit in which he agreed, inter alia, that no illegal drugs and no prostitution would be permitted on the premises. (Defs. Local R. 56(a) St. P 15, admitted by Pls.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 For purposes of this motion, the Court will consider the complaint solely the purpose of showing that a nuisance complaint was filed and not for the purpose of establishing the truth of the matters alleged in the complaint.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*12]

In 2000, the State Department of Consumer Protection, Liquor Control Commission, instituted an administrative action against Pagliuco d/b/a Dangerous

Curves Cafe for statutory violations n8 that occurred on September 17, 1999, November 30, 1999, March 5, 2000, and June 2, 2000. This matter was resolved through an Offer in Compromise that Dangerous Curves would be closed for forty-five (45) days and Pagliuco would pay a $ 10,000 fine. (Id. P 16, admitted by Pls.; Defs.' Ex. 6.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 Plaintiff was charged with violations of Conn. Gen. Stat. aa 30-54 and 30-86 and Regulations aa 30-6-A12, 30-A23(a)(1), 30-6-A23a, and 30-6-A24(d)(3)(g).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

On December 22, 2000, a health inspection of Dangerous Curves was conducted by defendant Gecewicz, who was employed by the City's Department of Health and Human Services as Director of Health, and defendant Dr. Boukhalil, a clinical physician with same department. They cited the business with several health violations and closed it for several[*13] hours until these violations were cleared. (Defs.' Local R. 56(a) St. PP 18, 19.)

Both Gecewicz and Boukhalil have testified by affidavit that, when they inspected the premises, they observed Pagliuco's three-year-old son sitting at the bar, as well as playing in various parts of the strip bar, including the women's bathroom/strippers' changing area in the presence of nude strippers. Defendant Gecewicz spoke with the child, who asked Gecewicz if he liked large breasts and whether he liked the strippers to have shaved pubic areas. (Gecewicz Aff. PP 6 & 7; see also Boukhalil Aff. PP 4 & 5.) Both regarded the child's presence in a strip bar as well as his comments to be inappropriate. Approximately two weeks later, they referred this matter to DCF for an investigation. (Gecewicz Aff. P 8; Boukhalil Aff. P 6.) Plaintiff Pagliuco denies that his child was ever present when Dangerous Curves was open. (Pls.' Ex. A.) However, plaintiff admits that he was subjected to an intensive investigation by DCF. (Id.) n9 Additionally, his son was required to undergo independent testing and evaluation by a licensed professional, at the family's expense. n10 (Id.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n9 Plaintiff states that DCF completely exonerated him and his family and concluded that the accusations of Gecewicz and Boukhalil were false. These statements, however, are inadmissible hearsay and cannot be considered by the Court in ruling on this motion for summary judgment. See generally Fed. R. Evid. 801; Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit).

No admissible evidence has been produced by plaintiff to support the findings of DCF regarding the reports filed against him by Gecewicz and Boukhalil.[*14]

n10 Plaintiff Pagliuco states that the licensed professional who evaluated his son concluded that it was impossible for the accusations of defendants Gecewicz and Boukhalil to have been truthful. (Pls.' Ex. A P 9.) Again, this statement is inadmissible hearsay, and plaintiffs have failed to provide any admissible evidence to support this alleged finding.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Discussion

I. Plaintiffs' Equal Protection Claims

Plaintiffs allege that their rights under the Equal Protection Clause of the Fourteenth Amendment were violated by the City of Bridgeport and defendant Sapiro's unequal enforcement of the laws against them in an irrational and arbitrary manner and based on the race of their clientele, predominantly African-American.

[HN5] "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is 'essentially a direction that all persons similarly situated be treated alike.'" LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985));[*15] see also Scott v. Town of Monroe, 306 F. Supp. 2d 191, 197 (D. Conn. 2004).    [HN6] "To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Knight v. Connecticut Dep't of Public Health, 275 F.3d 156, 166 (2d Cir. 2001); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

A. Lack of Third-Party Standing

Initially, defendants argue that plaintiffs, who are non-minorities, lack "third-party standing" to bring these equal protection claims on behalf of their African-American clientele. The Court disagrees and finds that plaintiffs have standing to assert these claims.

Here, the constitutional challenge[*16] involves defendants' interference with plaintiffs' business on impermissible grounds. Plaintiffs are not attempting to vindicate the rights of their clientele. They are asserting their own right to be free from unequal enforcement of the laws based on discriminatory criteria - namely the race of their patrons.

The courts have repeatedly recognized that non-minority vendors or business owners, such as plaintiffs, have standing to maintain such claims. See, e.g., Wilson v. City of North Little Rock, 801 F.2d 316, 322 n.2 (8th Cir. 1986) (holding that a nonminority business owner had standing to bring a § 1983 claim against the city and several police officers who set up an unauthorized road block near his business to harass his African-American customers); Cutting v. Muzzey, 724 F.2d 259, 260 (1st Cir. 1984) (recognizing that a developer of low income housing largely for blacks had standing to assert a § 1983 claim); Scott v. Greenville County, 716 F.2d 1409, 1415 (4th Cir. 1983) (holding that standing to assert that discriminatory government action violated the equal protection clause is not lacking simply because the plaintiff is[*17] not a member of a minority); Pisello v. Town of Brookhaven, 933 F. Supp. 202, 212 (E.D.N.Y. 1996) (holding that property management company had standing to bring civil rights action against the town and town officials for harassment in retaliation for the plaintiff's helping minorities find housing); see also Craig v. Boren, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (holding that a vendor had standing to challenge a state statute prohibiting the sale of 3.2% beer to males under the age of 21 and females under the age of 18).    [HN7]  "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Supreme Court has] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Harlen Assocs., 273 F.3d at 499.

Accordingly, the Court finds that plaintiffs have standing to raise an equal protection claim that they were singled out for disadvantageous treatment because of their African-American clientele.

[*18] B. Failure to Allege Specific Instances of Selective Enforcement

Defendants next assert that they are entitled to summary judgment on plaintiffs' equal protection claims because plaintiffs have set forth only conclusory allegations of selective treatment, which are insufficient to state a claim.

[HN8] The  Second Circuit  has held that a plaintiff must allege purposeful and systemic discrimination by specifying instances in which the plaintiff was singled out for unlawful oppression in contrast to others

similarly situated. Albert v. Carovano, 851 F.2d 561, 573 (2d Cir. 1988) (internal citations and quotation marks omitted). Conclusory allegations of selective treatment are not enough. Id.

The Court finds that plaintiffs have alleged specific actions taken by defendants and, thus, have stated their equal protection claims with sufficient particularity to survive summary judgment.

C. Failure to Show Different Treatment of Similarly Situated Businesses

Defendants next assert that plaintiffs have failed to carry their burden of proving that others similarly situated were treated differently. Defendants argue that the businesses that plaintiffs seek to[*19] compare to Dangerous Curves were not similarly situated in that all but one did not offer adult entertainment, and most, if not all, had a different class of liquor permit. (Defs.' Mem. at 38-40.)

[HN9] "To be similarly situated, the individuals with whom [the plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (internal quotation marks and citations omitted) (emphasis added). n11 The plaintiff must establish "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (holding that a plaintiff is "not obligated to show disparate treatment of an identically situated employee . . . . It is sufficient that the employee to whom plaintiff points be similarly situated in all material respects. . . . In other words, . . . those employees must have a situation sufficiently similar to plaintiff's to support[*20] at least a minimal inference that the difference in treatment may be attributable to discrimination.") (internal quotation marks and citations omitted) (original emphasis).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n11 In Shumway, relied upon by plaintiffs, the Court held that the plaintiff in a Title VII gender discrimination case had failed to meet her prima facie burden of showing that she was treated differently from "similarly situated" males. The Court found that the plaintiff had failed to allege any facts demonstrating that male employees with the same supervisors were treated differently. The plaintiff also failed to allege that any of other employees engaged in the same misconduct as she had. "To demonstrate that similarly situated males were treated differently, Shumway has to show that these males engaged in comparable conduct." 118 F.3d at 64.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[HN10] As a general rule, whether persons are similarly situated is a factual issue that should be submitted to the jury. Graham, 230 F.3d at 39; see also Kirschner v. Zoning Bd. of Appeals of Valley Stream, 924 F. Supp. 385, 394 (E.D.N.Y. 1996)[*21] (holding that the issue of whether two shops were similarly situated was a "classic" issue of fact precluding summary judgment). However, as the Second Circuit held in Harlen Associates, "this rule is not absolute," and "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." 273 F.3d at 499 n.2.

Plaintiffs have cited to thirteen (13) other businesses, all located less than a mile from Dangerous Curves, all serving a predominantly Caucasian clientele, but none of which was ever (or was only rarely) raided by defendants. (Pls.' Ex. A.) Additionally, in their Local Rule 56(a)2 Statement, they state in conclusory fashion that each of these businesses was similar to Dangerous Curves in the nature of the business and the activities that occurred there. (Pls.' Local R. 56(a)2 St. at PP 8-20.) Pagliuco's own deposition testimony, however, belies these general assertions. In his deposition, he admits that twelve of the thirteen businesses did not have go-go dancers or adult entertainment. (Defs.' Ex. 5, Pagliuco Dep. at 48-52.) Many were full service restaurants, unlike Dangerous Curves which served[*22] only frozen pizza. (Id.) The one establishment that had go-go dancers did not have a liquor license. (Id. at 50.)

Plaintiffs' verified complaint alleges only that the businesses were "similarly situated" (Pls.' Comp. P 11), a legal conclusion that is not entitled to any weight, and that the businesses were "comparable" (Pls.' Comp. P 12), again a statement far too vague and conclusory to be relied upon by the Court. See Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (holding that

[HN11] to avoid summary judgment non-moving party could "not rely simply on conclusory allegations or speculation ..., but instead must offer evidence to show that its version of the events is not wholly fanciful") (internal citations and quotation marks omitted); Shumway, 118 F.3d at 65 (characterizing plaintiff's "conclusory statements" that numerous male employees violated company policy by fraternizing with female employees as "sweeping allegations unsupported by admissible evidence," which did not raise a genuine issue of material fact); see also Allen v. Coughlin, 64 F.3d 77, 80 (2d Cir. 1995) (holding that conclusory affidavits could not overcome[*23] properly supported summary judgment motion); see generally 11 Moore's Federal Practice 3d at a 56.14[1][d] ("Allegations that proffer legal conclusions . . . but are not buttressed with factual support expressed in the affidavit" may not serve as the basis for supporting or opposing a motion for summary judgment).

Plaintiffs have failed to offer any admissible evidence concerning the nature of each establishment's business and how it was comparable to that of Dangerous

Curves, or that any of these establishments engaged in conduct comparable to Dangerous Curves that should have subjected them to similar law enforcement efforts. From the scant record before the Court, there is no basis from which a reasonable fact-finder could conclude that Dangerous Curves was singled out for selective treatment as compared to these other establishments. Plaintiffs have offered little more than that these businesses were located in relative close proximity to Dangerous Curves and served a predominantly Caucasian clientele. These factors alone do not demonstrate that these businesses were "similarly situated" for purposes of meeting plaintiffs' burden of proof[*24] on their equal protection claim.

Thus, the Court finds that plaintiffs' a 1983 equal protection claims must fail because plaintiffs have failed to establish the first element of their selective enforcement claim -- that defendants singled them out for selective law enforcement when compared to similarly situated establishments. See LaTrieste Restaurant, 188 F.3d at 69. n12

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n12 The Court also questions whether plaintiffs have met or could meet their burden with respect to the second element of their claim, that such differential treatment was based on impermissible considerations such as the race of plaintiffs' clientele.

With respect to plaintiffs' claims against the City, the Court would note that plaintiffs have not alleged nor proffered any evidence to support a claim that their constitutional deprivation occurred pursuant to a policy or custom of the City. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipality has no liability for alleged a 1983 violations under a theory of respondeat superior. Id.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*25]

Having found that plaintiffs have failed to establish an essential element of their equal protection claim, the Court need not address defendants' argument concerning qualified immunity.

II. Plaintiffs' Claims Against Gecewicz and Boukhalil

Plaintiff Pagliuco asserts in his verified complaint that, twelve days after a raid of Dangerous Curves on December 23, 2000, defendants Gecewicz and Boukhalil falsely and maliciously reported to DCF that Pagliuco was endangering the morals, health, and safety of his three-year-old son. They reported to DCF that during an inspection of Dangerous Curves they observed plaintiff's son

sitting at the bar and playing in various parts of the strip club, including the women's bathroom and strippers' changing room, in the presence of partially nude strippers. They talked with the child, who reportedly asked them in rather graphic detail about features of women's anatomy that they liked. They reported these incidents to DCF. (Defs.' Ex. 2 & 3.)

Defendants argue that they are entitled to summary judgment because they filed a truthful report with DCF. Plaintiffs contend that there is a genuine issue of material fact based upon plaintiff's[*26] sworn statement that his son was never in Dangerous Curves when it was open and that DCF, after a thorough investigation, completely exonerated plaintiff.

While plaintiff's affidavit states that his son was never in Dangerous Curves when it was open, that statement standing alone does not contradict the sworn statements by Boukhalil and Gecewicz that they observed plaintiff's three-year-old child in the presence of strippers and that inappropriate remarks were made by the child. The record includes a picture taken by defendant Gecewicz during the inspection showing the child inside Dangerous Curves sitting at the bar. (Defs.' Ex. 2 P 5; Defs.'s Ex. 11.) While plaintiff states that DCF completely exonerated him and his family, this statement is inadmissible hearsay, see Note 9, supra, and plaintiff has failed to provide any other admissible evidence that the reports by these defendants were false.

Defendants were mandated reporters under Conn. Gen. Stat. a 17a-101(b) and are entitled to statutory immunity so long as their reports were filed in good faith. Section 17a-101e(b), Conn. Gen. Stat., provides: [HN12] "Any[*27] person, institution or agency which, in good faith, makes . . . the report pursuant to section[] 17a-101a . . . shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed and shall have the same immunity with respect to any judicial proceeding which results from such report provided such person did not perpetuate or cause such abuse or neglect." While this immunity would not apply if the defendants intentionally and maliciously filed false reports, there is no evidence in the record that their reports to DCF were false. Absent such evidence, defendants are entitled to statutory immunity on plaintiffs' substantive due process claim and their state-law claim of intentional infliction of emotional distress. See Manifold v. Ragaglia, 272 Conn. 410, 421, 862 A.2d 292 (2004).

III. The City's Unjust Enrichment Claim

In addition to seeking summary judgment on plaintiffs' claims, the City has moved for summary judgment on its counterclaim for unpaid rental payments based on a state commonlaw theory of unjust enrichment.

[HN13] Unjust enrichment is essentially an equitable doctrine, to be applied where no remedy is available[*28] pursuant to contract. Weisman v.

Kaspar, 233 Conn. 531, 550, 661 A.2d 530 (1995). The Connecticut courts have allowed a party to recover on a theory of unjust enrichment on the ground that, in a given situation, "it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." Id.; see also Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282, 649 A.2d 518 (1994). "Ordinarily in an unjust enrichment case, the measure of damages is not the loss to the plaintiff but the benefit to the defendant." Hartford Whalers Hockey Club, 231 Conn. at 285.

In this case, the City never entered into a lease with plaintiffs. Rather, the City seeks $ 79,200 in damages based upon the $ 2,200 monthly basic rental plaintiffs had been paying to their former landlord for the thirty-six months that plaintiffs occupied the premises while they were owned by the City. n13 Plaintiffs, on the other hand, claim that they tendered the rental payments to the City but the payments were not accepted.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n13 The City acquired the property on October 15, 1998 and evicted plaintiffs on September 23, 2001. They seek rental payments for the period from November 1998 through October 2001. Since the plaintiffs were evicted in September 2001, it is not clear to the Court on what theory the City claims entitlement to rental payments following plaintiffs' eviction. The Court computes the relevant time period as thirty-five months.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*29]

The dispute between the City of Bridgeport and plaintiffs presents a quintessential state-law claim, which should more appropriately be resolved by the state courts. Having granted summary judgment in favor of defendants on all of plaintiffs' substantive claims, the Court declines to exercise supplemental jurisdiction over this counterclaim and dismisses it without prejudice to the City's refiling in state court. 28 U.S.C. a 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

Conclusion

For the reasons set forth above, the Court GRANTS the Motion for Summary Judgment [Doc. # 43] in favor of defendants as to all claims asserted by plaintiffs in their amended complaint. Having granted summary judgment on all federal claims, the Court declines to exercise supplemental jurisdiction as to City's state-law claim for unjust enrichment and dismisses the counterclaim without prejudice.

Jury selection and the jury trial scheduled to commence on January 9, 2006, are hereby cancelled.

The Clerk is directed to enter judgment in accordance with this ruling.

SO ORDERED, this 13th day of December, [*30] 2005, at Bridgeport, Connecticut.

/s/ WILLIAM I. GARFINKEL

United States Magistrate Judge