UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LANNY MARDEN | : |
| | :          PRISONER |
| v. | : Case No. 3:02CV570(WIG) |
| | : |
| WARDEN LARRY MYERS, ET AL.[1] | : |

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 74]

The plaintiff, Lanny Marden, was incarcerated at Walker Reception and Special Management Unit in Suffield, Connecticut, when he filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He currently resides in Ellington, Connecticut. He alleges inter alia that during a six-week period in May and June 1999 and a seven-month period beginning in August 1999 and ending in March 2000, the defendants either confiscated or lost his boots which had been fitted with a heel lift and an orthotic arch support to compensate for the almost three-inch discrepancy in the length of his legs. Pending is a motion for summary judgment filed by the defendants. For the reasons that follow, the motion for summary judgment is denied.

---

[1] The defendants in this action are Warden Larry J. Myers, Major Neil Kearney, Major Michael LaJoie, Lt. Marc Alderucci, Pamela Shea, Dr. Edward Blanchette, Dr. Edward Pesanti, and Nurse Cheryl Malcom. On March 2, 2004, the court granted defendants' motion to dismiss as to the claims for injunctive relief, the claims against all defendants for monetary damages in their official capacities, and the individual capacity claims against Dr. Blanchette. Thus, all claims against Dr. Blanchette have been dismissed.

I.  <u>Standard of Review</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted).  Thus, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'"  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

The court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of

Depew, 75 F.3d 98, 107 (2d Cir.), cert. denied, 517 U.S. 1190 (1996)).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.  Facts[2]

The plaintiff has been incarcerated within the Department of Correction at various times since April 1994 and was most recently incarcerated at Osborn Correctional Institution. He currently resides in Ellington, Connecticut. The allegations against the defendants relate to incidents that occurred during the plaintiff's incarceration at Northern Correctional Institution ("Northern").

Prior to plaintiff's incarceration, at the age of thirteen, he sustained a fracture of his right femur while he was riding a dirt bike. As a result of this accident, the plaintiff's right

---

[2] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #74-4] and the Exhibits attached to defendants' Memorandum in Support of Motion for Summary Judgment [doc. # 74-1(A-L)], the plaintiff's Local Rule 56(a)2 Statement [doc. #76-1] and the Exhibits in support of plaintiff's Local Rule 56(a)2 Statement [doc. # 76-2].

4

leg is approximately three inches shorter than the left leg. Until his incarceration, he was unaware that an orthotic might alleviate the pain associated with the discrepancy in the length of his legs.

On April 14, 1997, the plaintiff asked a doctor at Corrigan Correctional Institution for a heel lift and orthotic for his right shoe. On June 2, 1997, a doctor at Walker Reception and Special Management Unit submitted a request to the Utilization Review Committee ("URC") seeking approval for an orthotic to compensate for the approximately three-inch difference in the length of plaintiff's legs. On June 16, 1997, the URC approved the request and directed the physician to refer the plaintiff to Newington Orthotics and Prosthetics Systems to be fitted for an orthotic after prison officials transferred him to his permanent facility assignment.

In February 1998, an orthotist fitted the plaintiff for a two-inch heel lift to be attached to the outside of his right boot and an orthotic consisting of a long arch support insert to be glued to the inside of the right boot. The purpose of the lift and arch support was to reduce stress on the plaintiff's right knee and balance the plaintiff's pelvis. The plaintiff received the lift and arch support insert in March 1998.

On May 3, 1999, the plaintiff slashed another inmate's face and head with a razor blade. The warden at Cheshire Correctional

Institution ("Cheshire") transferred the plaintiff to Northern after the assault because he deemed the plaintiff a threat to the safety and security of other inmates at Cheshire. Upon his arrival at Northern on May 18, 1999, a nurse at the plaintiff's intake health screening informed the plaintiff that he could not have his prescribed heel lift and orthotic arch support because of safety and security concerns. Pursuant to instructions from the medical staff, the plaintiff wrote to defendant Myers, the Warden at Northern, on two occasions in June 1999, informing him that his right leg was shorter than the left, his knee was deformed and his was experiencing a lot of pain. He asked defendant Myers to return his medically prescribed boots, one of which was fitted with a heel lift and orthotic arch support. Defendant Myers referred the plaintiff back to the medical department. Department of Correction personnel returned plaintiff's boots to him on or about June 29, 1999.

On August 14, 1999, prison staff conducted a shakedown of plaintiff's cell. During the shakedown, prison staff placed the plaintiff in a shower. When the plaintiff returned to his cell, he noticed that the orthotic arch support and linings had been ripped from his boots and were missing. The plaintiff could not wear the boots without the orthotic arch support. On August 16, 1999, the plaintiff submitted an Inmate Request to the medical department regarding the removal of the orthotic arch support and

6

the pain he was experiencing in his right knee.

On August 20, 1999, Dr. Fedus, a podiatrist, examined the plaintiff and noted the discrepancy in the length of plaintiff's legs and the deformity of his knee. The plaintiff complained of pain in his knee and his back when he stood or walked. Dr. Fedus opined that it would be medically appropriate to provide the plaintiff with a shoe with a heel lift on the outside and an orthotic arch support inside. On August 25, 1999, a physician entered an order for orthotics for the plaintiff.

On September 3, 1999, Dr. Fedus examined the plaintiff and again noted that plaintiff was experiencing pain in his right knee and back due to the discrepancy in the length of his legs, prescribed pain medication, and submitted a request to the URC for a heel lift and an orthotic arch support for the plaintiff. Dr. Fedus noted that the plaintiff was experiencing right knee and back pain due to the discrepancy in the length of his legs.

On September 14, 1999, the URC did not deny or grant the request, but rather directed Dr. Fedus to refer the issue of the lost orthotic arch support to the Department of Correction to investigate. At that time, defendants Dr. Edward Pesanti and Nurse Cheryl Malcom were members of the URC. As of September 9, 1999, defendant Kearney, a Major at Northern, was already investigating the lost orthotic arch support.

On October 29, 1999, Dr. Fedus again examined the plaintiff

7

and noted that the plaintiff reported pain in his right leg and back due to the discrepancy in the length of his legs. Dr. Fedus prescribed pain medication. The following day he submitted a request to the URC for a heel lift and an orthotic arch support to decrease the plaintiff's right limb length discrepancy and reduce erosion of plaintiff's right foot and for an orthopedic evaluation of plaintiff's right knee. On November 2, 1999, the URC issued a decision recommending conservative management and indicated that the plaintiff could use an orthotic brought from home on the approval of the Department of Correction.

On November 12, 1999, Dr. Fedus examined the plaintiff and noted that the plaintiff experienced pain in the arch of his right foot, his right knee, and lower back due to the discrepancy in his leg lengths and that the heel lift and arch support was missing from plaintiff's old boots. Dr. Fedus approved an orthotic arch support and a heel lift to relieve plaintiff's symptoms. He recommended that the plaintiff obtain the orthotic arch support and heel lift either through the Department of Correction or through his family. He noted that the orthotic arch support and heel lift would have to comply with any security concerns of the Department of Correction.

Also on November 12, 1999, defendant Alderucci, a lieutenant at Northern, issued a report pursuant to his investigation of the plaintiff's allegations concerning the destruction of his boots

equipped with the lift and orthotic arch support. He concluded that the plaintiff's boots were fully functional and that medical staff had confirmed that an order for new boots with an orthotic arch support had been submitted to an outside prosthetic company. He recommended that no further action be taken.

On December 5, 1999, the plaintiff complained of pain in his right leg and a nurse prescribed pain medication and placed the plaintiff on the sick call list to see a physician. On January 3, 2000, Nurse Wollenhaupt reported that she had reviewed the plaintiff's chart with defendant Kearney, but the Medical Department could take no further action because the URC had not approved a replacement orthotic.

On January 4, 2000, defendant Pam Shea, a Health Services administrator at Northern, indicated that the plaintiff could have an orthotic sent in from home to be approved by the security staff. On January 5, 2000, the plaintiff informed Nurse Wollenhaupt that he would be unable to have his family send in an orthotic. On February 7, 2000, the plaintiff was measured for a heel lift and an orthotic arch support. The plaintiff received the new boots with the heel lift and orthotic arch support on March 30, 2000. Plaintiff experienced some pain during the two- to six-week adjustment period after receiving the new boots.

On July 17, 2001, a physician diagnosed the plaintiff as suffering from lumbar scoliosis. A doctor, who practiced

9

medicine in Columbia for three years, but who is not licensed to practice medicine in the United States, avers that an untreated discrepancy in leg length is one of the causes of lumbar scoliosis. Plaintiff did not experience back pain until Northern correctional officers confiscated his orthotic during 1999 and 2000.

III. Discussion

The defendants raise two grounds in support of their motion for summary judgment. They argue that (1) the plaintiff fails to state a claim under the Eighth Amendment for deliberate indifference to his medical needs because he did not suffer from a serious medical need during the time periods in question; and (2) they are entitled to qualified immunity.

    A.    Failure to State a Claim of Deliberate Indifference to Medical Needs

The defendants argue that the plaintiff has failed to state a claim of deliberate indifference to his medical needs because he did not suffer from a serious medical condition or need during either of the time periods in question. The plaintiff contends that the evidence supports his claim of a serious medical need.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs." Id. at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the intentional interference with medical treatment once prescribed.  See id. at 104-05.

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  A serious deprivation contemplates an urgent medical condition that may result in "'death, degeneration, or extreme pain.'"  Hathaway, 37 F.3d at 66 (internal citation omitted).  In addition, the existence of a serious medical condition is present "where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998)(internal quotation marks and citations omitted).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Id.  A prison official does not act in a deliberately indifferent manner unless that

official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants argue that the plaintiff did not suffer from a serious medical condition or serious medical need during either the six week period or the seven month time period when he did not have or could not use his boots fitted with a heel lift and orthotic arch support. There is no precise guide on which a court might rely in evaluating the seriousness of an inmate's medical condition or need. See Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance, 143 F.3d at 702 (internal citation omitted). In addition, the court should consider not only the severity of the inmate's underlying medical condition, but also the risk of harm faced by the inmate due to the charged deprivation of treatment. Id.; Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) ("When

the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged <u>delay</u> or <u>interruption</u> in treatment rather than the prisoner's <u>underlying medical condition</u> alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim.") (internal quotation marks and citation omitted)(emphasis in original).

    Both the plaintiff and the defendants have offered evidence addressing the factors set forth in <u>Chance</u>. The plaintiff has alleged that the discrepancy in the length of his legs was a source of chronic pain in his right leg and knee and back during the time periods when he did not have the heel lift and orthotic arch support. This allegation is supported by entries in the plaintiff's medical records and inmate request forms and grievances submitted to the medical department and correctional staff, which document his complaints of pain in his lower back and right leg and his requests for the return of the boots fitted with the heel lift and orthotic arch support during both time periods. The defendants have submitted evidence that medical personnel only prescribed mild forms of pain relief to the plaintiff during the time periods in question.

    The medical records reflect that during the first time period, a nurse noted the discrepancy in the length of

plaintiff's legs and agreed to check with the property officer for plaintiff's boot equipped with the heel lift and orthotic arch support and referred the plaintiff to see a doctor to obtain a pass to sleep on a bottom bunk.  During the second time period, Dr. Fedus examined the plaintiff, noted the discrepancy in his leg lengths and his complaints of knee and back pain while walking and standing, and opined that a heel lift and orthotic arch support would relieve plaintiff's back and knee pain.  Dr. Fedus also submitted two requests to the URC for a heel lift and orthotic arch support for the plaintiff.  Thus, contrary to the defendants' contention that no medical doctor considered the plaintiff's need for an orthotic to be medically necessary, these records indicate that Dr. Fedus thought the plaintiff's condition sufficiently serious to be "worthy of comment."  See Chance, 143 F.3d at 702.

With respect to the impact of the plaintiff's condition or need on his daily activities, the defendants offer evidence that inmates in Phase I of the Administrative Segregation Program at Northern are required to eat in their cells and are permitted to shower three times a week and recreate five hours per week.  The plaintiff participated in the Native American smudging ceremony on a daily basis within his housing unit beginning in February 2000.  The plaintiff did not have to leave his housing unit except to go to court or to a medical appointment.

14

The plaintiff avers that he paced in his cell to relieve stress and participated in daily smudging ceremonies as part of his religious affiliation, but experienced pain in his right leg and knee while performing these activities. The grievances attached to plaintiff's memorandum in opposition to the motion for summary judgment reflect that plaintiff complained that the pain in his right leg and back made it difficult for him to walk and to sleep, prevented him from participating in any sports during recreation, and impaired his ability to shower because he could only stand for a short period of time in the shower stall.

The parties have offered conflicting evidence as to the degree of pain suffered by the plaintiff during the time periods he could not use or did not have the heel lift and orthotic arch support and the impact of the pain and instability of his right knee and leg on his daily activities. Thus, there are disputed issues of fact as to the factors identified by the Second Circuit in Chance to be considered in determining whether an inmate's medical need or condition is serious.

In addition, the plaintiff has submitted evidence that creates an issue of fact as to whether the deprivation of the heel lift and arch support caused him to suffer additional or future injury. See Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (finding that "because a tooth cavity will degenerate with increasingly serious implications if neglected over

15

sufficient time, it presents a 'serious medical need' within the meaning of our case law") (citing Chance, 143 F.3d at 702-03). The medical records reflect that plaintiff's complaints of back pain did not occur until after the confiscation of the heel lift and orthotic in May 1999. In 2001, a doctor diagnosed the plaintiff with lumbar scoliosis. The plaintiff has submitted an affidavit of a physician who states that a disparity in leg length can cause scoliosis.

The court concludes that there are issues of material of fact in dispute as to whether the plaintiff suffered from a serious medical condition in 1999 and 2000 and whether the deprivation of the heel lift and arch support during the time periods in question constituted a serious medical need. The dispute as to the seriousness of plaintiff's medical condition/need precludes the court from granting summary judgment to the defendants.[3]

---

[3] The defendants do not assert an argument addressed to the deliberate indifference prong of the Eighth Amendment standard. The plaintiff has submitted evidence to create disputed issues of fact as to whether some or all of the defendants were aware that he might suffer significant harm when forced to walk, stand and perform or participate in other daily activities without the heel lift and arch support during the six-week and seven-month periods and whether they intentionally disregarded that potential harm because of concerns other than safety and security. Thus, the defendants have not met their burden of demonstrating that no genuine issues of material fact exist as to the subjective component of the Eighth Amendment standard.

B.   Qualified Immunity

The defendants argue that even if the court concludes that the plaintiff suffered from a serious medical condition during the time periods in question, they are entitled to qualified immunity because under the law in effect at the times in question, a reasonable correctional officer would not have been aware that such a condition was serious.

Qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Hathaway, 37 F.3d at 67 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the court concludes that "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Id.  The determination of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." Id.; see also Anderson v. Creighton, 438 U.S. 635, 640 (1987).

The Second Circuit has instructed the district courts to consider three factors in determining whether a particular right was "clearly established" for purposes of evaluating a claim of qualified immunity: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Shechter v. Comptroller of New York, 79 F.3d 265, 271 (2d Cir. 1996) (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989))

Construing the allegations in the light most favorable to the plaintiff, the court finds that the complaint sets forth a claim that he suffered from a serious medical condition and/or need due to the significant discrepancy in the length of his legs and that the defendants were deliberately indifferent to that condition and/or need when they confiscated his boots fitted with a heel lift and orthotic arch support for six weeks in May and June 1999 and when they subsequently removed the lining and orthotic arch support from his boots in August 1999 and failed to return or replace them until March 2000. The court concludes

that the right to be free from deliberate indifference to serious medical needs, established in Estelle, 429 U.S. at 104-05, and Chance, 143 F.3d at 702, encompasses the conduct alleged in the plaintiff's complaint.  There is no question that a prisoner's right to adequate medical treatment for a serious medical need under the Eighth Amendment was clearly established at the time of the plaintiff's confinement in Northern beginning in May 1999. See Estelle, 429 U.S. at 104 (intentional delay or denial of medical treatment for inmate's serious medical needs may state a claim of deliberate indifference to medical needs).

Crediting the plaintiff's allegations concerning the degree of pain he experienced, the impact on his daily activities, and the fact that both he and a physician believed his medical condition and/or medical need was worthy of comment, the court cannot conclude that it was objectively reasonable for the defendants to believe that the plaintiff did not suffer from a serious medical condition and/or need during the time periods when he did not have or could not use his boots fitted with the heel lift and orthotic arch support.[4]  Accordingly, the defendants' motion for summary judgment on the ground of qualified immunity is denied.

---

[4] The court addresses only the objective prong of the Eighth Amendment standard as the defendants do not assert a qualified immunity argument with respect to the deliberate indifference prong of the standard.

IV. <u>Conclusion</u>

The defendant's Motion for Summary Judgment [**Doc. #74**] is **DENIED**. This is **not** a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #70] and, on November 30, 2005, the case was transferred to the undersigned for all purposed including the entry of judgment.

SO ORDERED this <u>  13th  </u> day of April, 2007, at Bridgeport, Connecticut.

<u>   /s/ William I. Garfinkel   </u>
WILLIAM I. GARFINKEL
United States Magistrate Judge
